UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEFFREY ROY CROSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00086-JPH-DLP |
| | ) | |
| J. BRADLEY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Leave to Proceed *in Forma Pauperis*,
Screening and Dismissing Complaint, and Directing Plaintiff to Show Cause**

**I. Motion for Leave to Proceed *in Forma Pauperis***

The plaintiff's motion for leave to proceed *in forma pauperis*, dkt. [2], is **denied** because he has sufficient funds to pay the filing fee. The plaintiff shall have **through May 7, 2021**, to pay the $402.00 filing fee for this action as required by 28 U.S.C. § 1915(a)(2). The failure to do so by this date will result in the dismissal of this action without further warning.

**II. Screening of the Complaint**

Plaintiff Jeffrey Crosby, an inmate currently incarcerated at the United States Penitentiary in Terre Haute, Indiana ("USP-TH"), files this action alleging violations of his constitutional rights. Because Mr. Crosby is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint.

**A. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies

the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

**B. The Complaint**

Mr. Crosby brings this action alleging violations of his constitutional rights pursuant to the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *See Khan v. United States*, 808 F.3d 1169, 1172 (7th Cir. 2015); *King v. Federal Bureau of Prison*, 415 F.3d 634, 636 (7th Cir. 2005) (*Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers . . ."). He names four defendants: 1) J. Bradley; 2) Mr. Pound; 3) Officer Maze; and 4) Warden T. J. Watson.

Defendant Pound is Mr. Crosby's unit case manager and thus has authority over transfers and other matters of confinement and location status of inmates within his unit. Mr. Pound has told Mr. Crosby that USP-TH has a policy that an inmate must have five years of clear conduct before he is eligible for transfer to his home jurisdiction. Mr. Crosby alleges that this is contrary to Federal Bureau of Prisons ("BOP") policy, which requires 18 months of clear conduct before an inmate becomes eligible for transfer to his home jurisdiction.

On February 21, 2019, Mr. Pound issued an incident report charging Mr. Crosby with possession of intoxicants and destruction of government property less than $100. Mr. Crosby was

2

placed in the special housing unit ("SHU") until Defendant Bradley could conduct a disciplinary hearing. While in the SHU, a unit officer packed up Mr. Crosby's personal property, and Mr. Crosby lost $200 worth of personal property. He filed a tort claim for the loss, but this claim was denied in December 2019.

Mr. Crosby accepted full responsibility for the incident report. Mr. Bradley imposed sanctions of a $200 fine, loss of 41 days of earned good conduct time, 180 days loss of commissary and phone privileges, and placement in the "'transition unit,' a step-down unit for some inmates leaving SHU." Dkt. 1 at 2. The transition unit imposes more restrictions on inmates than general population units. Inmates have less time out of their cells, limited access to commissary, and limited access to showers, recreation, and legal typing. While in the transition unit, Mr. Crosby was also on an "'encumbrance' restriction" that further limited his access to commissary until he paid the fine imposed as a disciplinary sanction. Additionally, Mr. Crosby's placement in the transition unit delayed his eligibility for transfer to his home jurisdiction.

While in the transition unit, Mr. Crosby was placed in a cell with another inmate. Shortly after his cellmate was moved to the SHU, Mr. Crosby received another incident report for possession of intoxicants. Mr. Crosby challenges the handling of this incident report, alleging that no "calibrations" were logged, in violation of BOP policy, and that the officer who found the alleged intoxicants investigated the incident in violation of BOP policy.

Mr. Crosby requested a staff representative for the hearing on this second incident report. Prior to the disciplinary hearing for this incident report, Mr. Bradley told other correctional officers that Mr. Crosby was "going to the hole," meaning he would be placed in the SHU. Although Mr. Crosby maintained his innocence at the disciplinary hearing, Mr. Bradley found him guilty. Mr. Bradley imposed sanctions in the form of a $500 fine, loss of 180 days of commissary and phone

privileges, loss of 41 days earned good credit time, and placement in the SHU for 30 days. Mr. Crosby lost $150 worth of personal property when officers packed his belongings.

After spending two weeks in the SHU, Mr. Bradley informed Mr. Crosby of a rehearing on the second incident report. This rehearing did not involve a rewritten incident report or a formal hearing. Rather, a unit counselor spoke with Mr. Crosby in the SHU.

Mr. Crosby returned to the transition unit after spending 35 days in the SHU. Mr. Bradley conducted a formal rehearing on the second incident report and imposed the same sanctions. However, the sanctions imposed after the rehearing began again, causing Mr. Crosby to receive repeated sanctions. Mr. Crosby appealed the second incident report, but his appeal was denied. In December 2019, "Central Office" partially granted Mr. Crosby's appeal, and the second incident report was rewritten in January 2020, eight months after the initial issuance of the second incident report.

According to Mr. Crosby, the rewritten second incident report included calibrations that were not registered in the "log" and contained information concerning the quantity of intoxicants found that was not in the original second incident report. Mr. Bradley found Mr. Crosby guilty of the rewritten second incident report, imposed the same sanctions, and made Mr. Crosby serve those sanctions for a third time. As a result, Mr. Crosby remained on commissary and phone restrictions from February 2019 to August 2020, rather than 180 days. During this time, he did not have "access to fight his legal battles in the courts." Dkt. 1 at 5. He also could not speak with his family on the phone.

While on modified lockdown status due to COVID-19, Mr. Crosby submitted a medical sick call request because surgical hardware in his neck had slipped. On May 7, 2020, he was placed on the medical callout list for the next day at 7:30 a.m. Although Mr. Crosby presented himself for

medical callout at the right time, neither Mr. Pound nor two correctional officers on duty that morning allowed Mr. Crosby to go to medical. When Mr. Crosby used the "CALL" button to inform Mr. Pound and the correctional officers that he was to go to medical, the correctional officers said that he was not on the medical callout list, and Mr. Pound informed Mr. Crosby that he would receive an incident report. One of the correctional officers eventually let Mr. Crosby go to medical.

When Mr. Crosby returned from medical, he received an incident report for possessing or destroying a locking device. A lieutenant informed Mr. Crosby that he was being sent to the transition unit. Another correctional officer stated that Mr. Pound ordered him to write the incident report. Mr. Crosby was directed to report to the transition unit by 3:00 p.m. that afternoon in violation of the USP-TH policy concerning quarantines due to COVID-19. Shortly thereafter, Mr. Pound approached Mr. Crosby, searched him, and personally escorted him to the transition unit. When Mr. Crosby asked about the lockdown due to COVID-19, Mr. Pound responded that he did not care.

On May 8, 2020, Mr. Crosby tried to obtain a copy of the medical callout list, but it had been removed from the computer. Mr. Crosby alleges that it was removed to obstruct justice. During this time, he also learned that Mr. Bradley told several correctional officers that he would impose a $1,000 fine on Mr. Crosby if he could.

Mr. Crosby remained in the transition unit until August 12, 2020, when his counselor attempted to have him placed back in general population. However, Mr. Bradley told the counselor that Mr. Crosby would stay in the transition unit. On August 31, 2020, Mr. Bradley finally conducted a disciplinary hearing on the incident report for possessing or destroying a locking device. Despite Mr. Crosby's arguments that he was innocent of the incident report, Mr. Bradley

found him guilty and imposed sanctions of loss of 27 days of earned good credit time, loss of commissary and phone privileges for 90 days, and continued placement in the transition unit. Mr. Crosby appealed, but he has not received a response on his appeal though the deadline for a response has passed.

In December 2020, Mr. Crosby contracted COVID-19, and in January 2021, Mr. Crosby learned that he was to remain in the transition unit until notified. At that time, Mr. Crosby had spent almost 10 months in the transition unit even though BOP policy limits placement in the transition unit to a maximum of six months.

On January 12, 2021, Mr. Crosby was sent to the SHU. Officer Maze discarded all of Mr. Crosby's personal property, including a radio, headphones, writing utensils, clothing, toiletries, medications, and religious items. At some point, Mr. Crosby returned to the transition unit.

For relief, Mr. Crosby requests monetary damages, closure of the transition unit at USP-TH, reinstatement of his transfer status, assignment of a different case manager, and reversal of disciplinary sanctions that resulted in the loss of good time credit and loss of phone and commissary privileges.

### III. Analysis

First, it appears that Mr. Crosby asserts a claim against Officer Maze for destroying his personal property without due process of law in violation of the Fifth Amendment. "A claim for relief premised on due process violations where the prisoner had alternative remedies is [] not recognized by the Seventh Circuit in a *Bivens* action." *Kammeyer v. True*, No. 19-cv-00454-JPG, 2019 WL 2616193, *4 (S.D. Ill. June 26, 2019) (citing *Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018)). A federal inmate has administrative procedures available to seek compensation for the

loss of property, *see* 31 U.S.C. §§ 3723-3724, and thus Mr. Crosby's claim against Officer Maze must be **dismissed for failure to state a claim upon which relief may be granted**.

Next, although Mr. Crosby names Warden T. J. Watson as a defendant, he makes no factual allegations against him. "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 556 U.S. at 675. Without a suggestion of personal participation in the alleged constitutional deprivation, any claims against Warden Watson must be **dismissed for failure to state a claim upon which relief may be granted**.

Also, in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that a state prisoner may not bring a claim for damages under 42 U.S.C. § 1983 if judgment in the prisoner's favor "would necessarily imply the invalidity of his conviction or sentence." The *Heck* doctrine has been applied to *Bivens* claims against federal officers. *Hill v. Murphy*, 785 F.3d 242, 244 (7th Cir. 2015). Mr. Crosby's challenges to the multiple incident reports he has received since February 2019 and the sanctions imposed as a result of those incident reports impugn the validity of the disciplinary proceedings and his incident reports. In fact, as part of his request for relief, Mr. Crosby seeks vacatur of the sanctions imposed as a result of these disciplinary proceedings. *See* dkt. 1 at 9–10.

Where success in a civil rights action "would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (citing *Heck*); *see also Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896-97 (7th Cir. 2001) ("[U]nder *Heck*, a § 1983 claim for damages is not cognizable (i.e. does not accrue) if a judgment in favor of the plaintiff on that claim would

necessarily imply the invalidity of [the plaintiff's] conviction or sentence." (internal quotation marks and citation omitted)). Thus, any claims that implicate Mr. Crosby's disciplinary hearings and incident reports must be **dismissed without prejudice as barred by** *Heck*.

Finally, Mr. Crosby alleges that the defendants' actions were done "in the furtherance of a conspiracy that would be found in Section 1985 of Title 42." Dkt. 1 at 1. However, "the absence of any underlying constitutional claim forecloses the conspiracy claim." *Sully v. Goldenson*, 751 Fed. Appx. 905, 908 (7th Cir. 2018); *see also Cefalu v. Village of Elk Grove*, 211 F.3d 416, 424 (7th Cir. 2000). Therefore, any conspiracy claim must be **dismissed for failure to state a claim upon which relief may be granted.**

## IV. Dismissal of Complaint

Mr. Crosby's complaint must be dismissed for each of the reasons set forth above. However, the dismissal of his complaint will not in this instance lead to the dismissal of the action at present. Rather, Mr. Crosby shall have **through May 7, 2021,** in which to show cause why Judgment consistent with this Order should not issue. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013) ("Without at least an opportunity to amend or to respond to an order to show cause, an IFP application's case could be tossed out of court without giving the applicant any timely notice or opportunity to be heard to clarify, contest, or simply request leave to amend."); *Jennings v. City of Indianapolis*, 637 F. App'x 954, 954-55 (7th Cir. 2016) ("In keeping with this court's advice in cases such as *Luevano* . . ., the court gave Jennings 14 days in which to show cause why the case should not be dismissed on that basis."). If Mr. Crosby does not take action by this date, his complaint will be dismissed for failure to state a claim upon which relief may be granted without further notice.

## V. Conclusion

Mr. Crosby's motion for leave to proceed *in forma pauperis*, dkt. [2], is **denied**. He shall have through **May 7, 2021,** to pay the $402.00 filing fee for this action to the clerk of the district court. Mr. Crosby shall also have **through May 7, 2021,** to show cause why Judgment consistent with this Order should not issue.

**SO ORDERED.**

Date:  4/9/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JEFFREY ROY CROSBY
01961-043
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808